**UNITED STATES DISTRICT COURT**

**DISTRICT OF MAINE**

| | | |
|---|---|---|
| CLARK D. STUART AND ANITA M. STUART, | ) ) ) | |
| PLAINTIFFS | ) ) | |
| v. | ) ) ) | CIVIL NO. 2:17-CV-234-DBH |
| MORTGAGE ELECTRONIC REGISTRATION SERVICES, INC.; NATIONSTAR MORTGAGE LLC; AND CITIMORTGAGE, INC., | ) ) ) ) ) | |
| DEFENDANTS | ) | |

**DECISION AND ORDER ON MOTION TO DISMISS**

The issue in this case is whether Mortgage Electronic Registration Systems Inc. (MERS) should remain as a defendant in a lawsuit by Maine property owners/mortgagors seeking to quiet title to their property and recover various damages. I conclude that the plaintiffs have failed to state a claim against MERS and **GRANT** its motion to dismiss.

**PROCEDURAL HISTORY**

According to the Amended Complaint, the plaintiffs, Clark and Anita Stuart, are Maine property owners/mortgagors (their real estate is both residential and business). Am. Compl. (ECF No. 23) ¶¶ 10, 11. In 2008, they obtained mortgage financing on their property. Id. ¶¶ 12, 13. Mortgage Network, Inc. was the lender, but the mortgage stated in all caps: "FOR PURPOSES OF RECORDING THIS MORTGAGE, MERS IS THE MORTGAGEE OF RECORD" and,

in regular type, that the defendant Mortgage Electronic Registration Systems Inc. (MERS) "is acting solely as a nominee for" Mortgage Network, Inc. <u>Id</u>. & Ex. B. As a result of certain assignments, in 2010 the defendant Nationstar Mortgage, LLC, pursued a judicial foreclosure action in Maine Superior Court against the Stuarts. (Nationstar was substituted in the case for the defendant CitiMortgage, Inc. after CitiMortgage initially started the foreclosure.) <u>Id</u>. ¶¶ 18, 21-22. Ultimately the Maine Superior Court dismissed the lawsuit with prejudice for failure to prosecute, <u>id</u>. ¶ 29, and Maine's Law Court dismissed Nationstar's attempted appeal. <u>Id</u>. ¶ 31. Now the Stuarts have brought a lawsuit against MERS, Nationstar and CitiMortgage that seeks to quiet their title to the real estate and to recover various damages. The defendants removed the lawsuit from Cumberland County Superior Court to this federal court based upon diversity of citizenship. The defendant MERS then moved to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a claim against it.

## THE AMENDED COMPLAINT'S CLAIMS

The Stuarts assert nine counts:

1. To quiet their title to the real estate, and seeking attorney fees;

2. Damages for slander of title to their real estate, and attorney fees, on the basis that the existence of the mortgage constitutes a slanderous statement;

3. Declaratory judgment that the Note and Mortgage are extinguished;

4. Statutory declaration of their rights, with statutory and exemplary damages and attorney fees;

5. Damages for tortious interference, including attorney fees, because one or more of the defendants has carried fire and casualty insurance on the property;

6. Intentional infliction of emotional distress for dunning notices and credit information given to third parties;

7. Negligent infliction of emotional distress for the same conduct;

8. Violation of the Maine Fair Debt Collection Practices Act[1]; and

9. Punitive damages.

## ANALYSIS

I deal first with the Stuarts' arguments as stated in their Opposition to the Motion to Dismiss (ECF No. 19). The first, under the heading "**The Promissory Note**," attacks endorsements on the Mortgage Note. But there is nothing in the factual allegations of the Amended Complaint to suggest that MERS was a party to the Mortgage Note or assignments of the Mortgage Note. The Stuarts say, "MERS may well ultimately prove to be blameless, but as of now the actions of Nationstar are attributable to the true owner—and the evidence strongly suggests that, consciously or not, liability remains with MERS." Opp'n at 5. That is simply not enough under the Twombly/Iqbal[2] pleading standards of plausibility to assign MERS liability based upon the Mortgage Note.

Under the heading "**The Mortgage Assignments**," the Stuarts argue that "[w]hen the Stuarts conveyed title to the property by mortgage deed to MERS, at

---

[1] This is incorrectly listed in the Amended Complaint as a second Count VI.
[2] Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007); Ashcroft v. Iqbal, 556 U.S. 662 (2009).

that moment MERS held legal title to the property." Id. at 5. They go on to say that "MERS is the fee owner—period." Id. at 6. They also argue that under Maine Law Court cases, MERS has no power to convey that title, id. at 5, 7, that any assignment by MERS was "a nullity," and that "*Title continued to stay in MERS.*" Id. (emphasis original). "The conclusion after this analysis is that *MERS still has title to the Stuart property.* Since MERS has title to the property, albeit 'bare legal title,' it is a proper party at this state of the proceedings." Id. at 7 (emphasis original).

I turn to Maine law, which I must apply in this diversity case. Maine's Law Court has been very clear on what powers and rights MERS does and does not have under the conventional language used in mortgages such as this.[3]

According to the Law Court, "notwithstanding [a mortgage] reference to MERS as the 'mortgagee of record,' the mortgage in fact grant[s] to MERS 'only the right to record the mortgage' as the lender's nominee, and 'having only that right, MERS [does] not qualify as a mortgagee pursuant to our foreclosure statute." Bank of America, N.A. v. Greenleaf, 96 A.3d 700, 707 (Me. 2014) (quoting Mortg. Elec. Registration Sys., Inc. v. Saunders, 2 A.3d 289, 295-96 (Me. 2010) (denying MERS standing to foreclose)). MERS has no "right to foreclose on the property," "only the right to record the mortgage as nominee for the lender." Greenleaf, 96 A.3d at 707. And when MERS assigns its interest, it grants "only what MERS possessed—the right to record the mortgage as

---

[3] The parties have pointed to no language in the Stuarts' mortgage that is materially different on this point than the mortgage language in Saunders and Greenleaf that I cite in text.

nominee—because MERS could not have granted to another person or entity any greater interest in the mortgage than that enjoyed by MERS." Id.

In this case, MERS made two assignments. Am. Compl. Exs. C & E. The first, July 15, 2010, to CitiMortgage, assigned "all interest under that certain mortgage to Mortgage Electronic Registration Systems, Inc., from [the Stuarts]." Id. Ex. C. According to Greenleaf, all that assignment conveyed was the right to record the mortgage as nominee. That may create a problem for other defendants, but I do not understand how it creates liability for MERS. In the second, the "confirmatory assignment" of August 9, 2011, MERS "hereby assign[s] and transfer[s] to CitiMortgage, Inc. . . . all its right, title and interest in and to a certain mortgage executed by [the Stuarts]." Id. Ex. E. Same reasoning: according to Greenleaf, that conveys only the right to record the mortgage as nominee, maybe a problem for other defendants, but it does not furnish a basis for liability to the Stuarts on the part of MERS.

Thus, contrary to the Stuarts' arguments, I conclude that whatever power or rights MERS had under the mortgage document (and the Law Court says it was only the power to record the mortgage), in the two assignments MERS assigned all that it possessed. There is no legal title, even "bare," that survives the assignments.

Returning then to the nine claims in the Amended Complaint:

1.  There is nothing MERS can do to quiet the Stuarts' title;

2.  MERS has no role in any slander of title if the mortgage continues to exist as the Stuarts allege;

3.  MERS has and claims no rights that could be the subject of declaratory judgment;

4.  MERS has no power to act to discharge the mortgage;

5.  The Amended Complaint makes no allegation that MERS has done anything about insurance. (If in fact it is a named insured, <u>see</u> Amended Complaint ¶ 53, there is no allegation that MERS created that status for itself.);

6.  The allegations of MERS' role in dunning and credit information are insufficient under <u>Twombly</u>/<u>Iqbal</u> to state a claim for intentional infliction of emotional distress. (What the Amended Complaint says is that "[t]he Defendants, including, without limitation, Nationstar, Inc." caused these actions; it provides no information to support the assertion that anyone other than the lender's assignee—not MERS— took any action.);

7.  For negligent infliction of emotional distress, the same analysis as in item 6 above;

8.  For the Maine Fair Debt Collection Practices Act, the same analysis as in item 6 above, with the additional reason that the Amended Complaint does not allege facts to show that MERS is a debt collector; and

9.  Punitive damages are unavailable against MERS because all the preceding claims against MERS fail.

**CONCLUSION**

For all these reasons, I **GRANT** MERS's motion to dismiss for failure to state a claim under Rule 12(b)(6).

**SO ORDERED.**

**DATED THIS 24TH DAY OF AUGUST, 2017**

/S/D. BROCK HORNBY
**D. BROCK HORNBY**
**UNITED STATES DISTRICT JUDGE**